IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SHAMARA ABRAHAMS,

    Plaintiff,

v.                                                                  CASE NO.:

FIRST PREMIER BANK,                             **JURY TRIAL DEMANDED**

    Defendant.
_____/

## COMPLAINT

COMES NOW, Plaintiff, Shamara Abrahams, ("Plaintiff"), by and through the undersigned counsel, and sues Defendant, First Premier Bank, ("Defendant"), and in support thereof, respectfully alleges violations of the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

### INTRODUCTION

1. The TCPA was enacted to prevent companies like First Premier Bank from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5. For purposes of this action, jurisdiction and venue are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States; and, this action involves violations of 47 U.S.C. § 227(v)(1)(A)(iii). See Mims v. Arrow Fin. Servs., LLC, S.Ct. 740, 748 (2012) and Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1249 (11th Cir. 2014).

7. Venue is proper in this District as Plaintiff resides in this District, in Dekalb County, Georgia, the violations described in the Complaint occurred in this District and Defendant transacts business within Dekalb County, Georgia.

## FACTUAL ALLEGATIONS

8. Plaintiff, Shamara Abrahams (hereinafter "Plaintiff") is a natural person, citizen of the State of Georgia, and resides in Dekalb County, Georgia.

9. Plaintiff is the "called party." See *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012), reh'g denied (May 25, 2012).

10. Defendant, First Premier Bank (hereinafter "Defendant"), is a corporation with its principal place of business and registered agent located at 601 S. Minnesota Ave., Sioux Falls, South Dakota 57104-4824, and, which conducts business within the State of Georgia.

11. Plaintiff is the regular user and carrier of the cellular telephone number at issue in this matter, number (678) 328-8727 (hereinafter "cellular telephone") and was the called party of Defendant's hereinafter described calls.

12. At all times material hereto, Defendant attempted to collect on a on account number XXXXXXXXXXXX6420 (hereafter "subject account"), which was and/is serviced by Defendant.

13. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

14. Defendant intentionally, knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by calling Plaintiff's cellular telephone, from approximately August 2013 in attempt to collect on the subject account.

15. Defendant attempted to collect a debt from Plaintiff by this campaign of telephone calls.

16. Beginning in or about August 2013, Plaintiff began receiving automated telephone calls from Defendant to Plaintiff's cellular telephone.

17. Upon information and belief, some or all of the calls Defendant made to Plaintiff's cellular telephone were placed using an "automatic telephone dialing system" (hereafter "ATDS") which has the capacity to store or produce telephone

numbers to be called, without human intervention, using a random or sequential number generator (including, without limitation, a predictive dialer); and, to dial such numbers as specified in 47 U.S.C. § 227(a)(1).

18. Furthermore, upon information and belief, many of the calls at issue were placed by Defendant using a "prerecorded voice" or automated voice, as specified by the TCPA, 47 U.S.C. §227(b)(1)(A), such prerecorded messages did not include an automated option for Plaintiff to have his number removed from the call list and/or be added to the "do not call" list.

19. In or about August 2013, Defendant initiated its campaign of phone calls to Plaintiff on Plaintiff's cellular telephone.

20. Defendant called Plaintiff on Plaintiff's cellular telephone in excess of three hundred (300) times since August 2013 in an attempt to collect an alleged past due debt related to the subject account.

21. Plaintiff never provided Defendant her "express permission" to contact Plaintiff on Plaintiff's cellular telephone.

22. Upon receipt of Defendant's calls to Plaintiff, Plaintiff's caller identification feature identified the calls were being initiated from, but not limited to, (605) 333-6200.

23. Plaintiff identified the calls were being place by a prerecorded and/or automated system.

24. Plaintiff identified this prerecorded and/or automated voice system as such because the voice was unresponsive when spoken to and many of the calls were identical in both voice and content.

25. Further, Plaintiff received several voice mail messages from Defendant which also had a prerecorded and/or automated voice.

26. Due to the sheer volume of calls, Plaintiff was unable to maintain a fully contemporaneous log of each and every call she received; however, the following is a small sampling of the calls Plaintiff received from Defendant in which Plaintiff was able to maintain contemporaneously:

    i. October 7, 2013 at 9:13 am;

    ii. October 7, 2013 at 12:26 pm;

    iii. October 7, 2013 at 5:56 pm;

    iv. October 7, 2013 at 8:23 pm;

    v. October 8, 2013 at 9:23 am;

    vi. October 8, 2013 at 4:01 pm;

    vii. October 8, 2013 at 6:39 pm;

    viii. October 9, 2013 at 9:06 am;

ix. October 9, 2013 at 12:47 pm;

x. October 9, 2013 at 3:06 pm;

xi. October 9, 2013 at 5:34 pm;

xii. October 10, 2013 at 9:18 am;

xiii. October 11, 2013 at 9:22 am;

xiv. October 11, 2013 at 2:28 pm;

xv. October 11, 2013 at 3:49 pm;

xvi. October 12, 2013 at 9:15 am;

xvii. October 12, 2013 at 11:16 am;

xviii. October 12, 2013 at 1:55 pm;

xix. October 12, 2013 at 8:36 pm;

xx. October 14, 2013 at 9:54 am;

xxi. October 14, 2013 at 12:18 pm;

xxii. October 14, 2013 at 3:56 pm;

xxiii. October 14, 2013 at 6:22 pm;

xxiv. October 15, 2013 at 9:22 am;

xxv. October 16, 2013 at 9:40 am;

xxvi. October 16, 2013 at 1:10 pm;

xxvii. October 16, 2013 at 4:02 pm;

xxviii. October 16, 2013 at 6:03 pm;

xxix. October 17, 2013 at 8:29 am;

xxx. October 17, 2013 at 12:25 pm;

xxxi. October 17, 2013 at 2:28 pm;

xxxii. October 17, 2013 at 5:30 pm;

xxxiii. October 18, 2013 at 9:54 am;

xxxiv. October 18, 2013 at 12:22 pm;

xxxv. October 18, 2013 at 3:02 pm;

xxxvi. October 18, 2013 at 7:01 pm;

xxxvii. October 19, 2013 at 9:47 am;

xxxviii. October 19, 2013 at 12:03 pm;

xxxix. October 19, 2013 at 3:28 pm;

xl. October 19, 2013 at 5:15 pm;

xli. October 19, 2013 at 7:23 pm;

xlii. October 20, 2013 at 12:34 pm;

xliii. October 20, 2013 at 12:36 pm;

xliv. October 21, 2013 at 9:32 am;

xlv. October 21, 2013 at 11:39 am;

xlvi. October 21, 2013 at 1:57 pm;

xlvii.   October 21, 2013 at 4:57 pm;

xlviii.  October 22, 2013 at 9:52 am;

xlix.    October 22, 2013 at 12:14 pm;

l.       October 22, 2013 at 3:18 pm;

li.      October 22, 2013 at 5:47 pm;

lii.     October 23, 2013 at 9:34 am;

liii.    October 28, 2013 at 8:57 am;

liv.     October 28, 2013 at 10:58 am;

lv.      October 28, 2013 at 5:49 pm;

lvi.     October 31, 2013 at 4:38 pm;

lvii.    November 4, 2013 at 11:19 am;

lviii.   November 4, 2013 at 1:32 pm;

lix.     November 4, 2013 at 3:29 pm;

lx.      November 4, 2013 at 7:29 pm;

lxi.     November 5, 2013 at 10:34 am;

lxii.    November 5, 2013 at 2:04 pm;

lxiii.   November 5, 2013 at 4:14 pm; and

lxiv.    November 5, 2013 at 6:44 pm.

27. On multiple occasions, after speaking to an agent/representative of Defendant, Plaintiff requested for all calls to her cellular telephone immediately cease.

28. Plaintiff specifically noted her request for Defendant to immediately cease contacting her via her cellular telephone on September 25, 2013.

29. On multiple occasions Plaintiff spoke to agents of Defendant and requested to be removed from Defendant's automated system.

30. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to Plaintiff's cellular telephone in this case.

31. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to Plaintiff's cellular telephone in this case, with no way for the consumer, or Defendant, to remove the incorrect number.

32. Defendant's corporate policy is structured as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant that her payments are not past due.

33. Defendant has numerous complaints against them across the country asserting that their automatic telephone dialing system continues to without express consent.

34. Defendant has had numerous complaints from consumers against them across the country asking to not be called, however Defendant continues to call.

35. Defendant's corporate policy provided no means for Plaintiff to have her number removed from the call list.

36. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge that the called parties do not wish to be called.

37. Plaintiff did not expressly consent to Defendant's placement of telephone calls to Plaintiff's cellular telephone by the use of an automatic telephone dialing system or a pre-recorded or artificial voice prior to Defendant's placement of the calls.

38. Despite Plaintiffs request to cease all calls to her cellular telephone Defendant continued to bombard Plaintiffs cellular telephone up until the filing of this complaint.

39. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

40. Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation of the TCPA)

41. Plaintiff fully incorporates and realleges paragraphs one (1) through forty (40) as if fully set forth herein.

42. Defendant willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Defendant was calling the wrong number and to stop calling Plaintiff.

43. Defendant knowingly violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Defendant was calling the wrong number and to stop calling Plaintiff.

44. First Premier Bank repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against FIRST PREMIER BANK for statutory damages, punitive damages, actual damages, costs, interest, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

        Respectfully submitted,

        _/s/_____
        Octavio "Tav" Gomez, Esquire
        Morgan & Morgan, Tampa, P.A.
        201 North Franklin Street, 7th Floor
        Tampa, FL 33602
        Tele: (813) 223-5505
        Fax: (813) 223-5402
        Florida Bar No.: 338620
        Georgia Bar No.: 617963
        Attorney for Plaintiff(s)
        TGomez@ForThePeople.com